UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| JEROME ANDERSON, | **DECISION AND ORDER** |
| Plaintiff, | |
| v. | 1:23-CV-00397 EAW |
| FRANK NOWICKI, *et al.*, | |
| Defendants. | |

_____

## INTRODUCTION

Plaintiff Jerome Anderson ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this civil rights action, alleging that he was beaten by defendants Joshua Burch, Chad Dunning, Brian Greening, and John Does #1-5 in retaliation for having successfully brought a prior lawsuit against DOCCS personnel. (Dkt. 22). Plaintiff further alleges that defendants Frank Nowicki, Susan Beck, Anthony Rodriguez, and Marc McGrain thereafter participated in constitutionally inadequate disciplinary proceedings, depriving him of his right to due process. (*Id.*).

Currently before the Court are a partial motion to dismiss filed by defendants Burch, Dunning, Greening, McGrain, Nowicki, and Rodriguez (Dkt. 25) and a motion to dismiss filed by defendant Beck (Dkt. 33). Additionally, Plaintiff has filed an appeal of Magistrate Judge H. Kenneth Schroeder Jr.'s Text Order deferring entry of a case management order pending resolution of the pending motions to dismiss. (Dkt. 41).

- 1 -

For the reasons that follow, the Court grants in part and denies in part Burch, Dunning, Greening, McGrain, Nowicki, and Rodriguez's motion to dismiss and denies Beck's motion to dismiss. The Court further denies as moot Plaintiff's appeal of Judge Schroeder's Text Order.

## FACTUAL BACKGROUND

The following facts are taking from the amended complaint (Dkt. 22), which is the operative pleading. As is required at this stage of the proceedings, the Court treats Plaintiff's factual allegations as true.

In April of 2015, Plaintiff was assaulted by corrections officers while housed at the Green Haven Correctional Facility. (Dkt. 22 at ¶ 21). Plaintiff filed a lawsuit related to this assault (the "Green Haven Lawsuit") and, following a jury trial, was awarded $650,000 in compensatory and punitive damages. (*Id*. at ¶¶ 22-23). Plaintiff thereafter kept in his cell a copy of a newspaper article discussing the Green Haven Lawsuit, as well as a letter Plaintiff had written to several media outlets. (*Id*. at ¶ 24).

In April of 2022, Plaintiff was housed at the Attica Correctional Facility ("Attica"). (*Id*. at ¶ 25). On April 30, 2022, during a facility-wide search, corrections officers John Doe #1 and John Doe #2 entered Plaintiff's cell. (*Id*. at ¶¶ 26-28). During the search, John Doe #2 discovered the newspaper article and letter regarding the Green Haven Lawsuit and showed them to John Doe #1. (*Id*. at ¶¶ 30-31). Both officers then "began to search [Plaintiff's] cell more intensely," and they discovered obituaries of family members of Plaintiff's who had passed away during his incarceration. (*Id*. at ¶¶ 33-34). John Doe #2 put these obituaries into the toilet, causing them to become soiled with human waste. (*Id*.

at ¶ 37). One of the two officers took the newspaper article and the letter regarding the Green Haven Lawsuit with him after the search was concluded. (*Id*. at ¶ 38).

On May 4, 2022, Attica was locked down for another facility-wide search. (*Id*. at ¶ 39). It was uncommon for a two facility-wide searches to occur so close in time. (*Id*. at ¶ 40). As Plaintiff waited for his cell to be searched, he observed "three or four incarcerated individuals pass by who were clearly injured and being escorted to the infirmary." (*Id*. at ¶ 41). Plaintiff recognized at least one of these injured individuals as someone who had "previously filed a lawsuit against DOCCS and/or one or more corrections officers." (*Id*. at ¶ 44).

When it was time for Plaintiff's cell to be searched, corrections officers Dunning, Greening, and Burch rushed into his cell and told him to back up. (*Id*. at ¶ 49). As Plaintiff complied, Greening punched him in the face, causing him to temporarily lose consciousness. (*Id*. at ¶ 50). Plaintiff regained consciousness to find Dunning, Greening, Burch, and "one or more of Defendants John Does #1-5" punching, kicking, and elbowing him. (*Id*. at ¶ 51).

Greening then took the newspaper article about the Green Haven Lawsuit that had been removed from Plaintiff's cell on April 30, 2022, and "forcibly shoved" it into Plaintiff's mouth, causing an attached staple to cut Plaintiff's gums. (*Id*. at ¶¶ 52, 54). Greening threateningly asked Plaintiff, "in sum and substance, 'Where's your fucking lawyer now?'" (*Id*. at ¶ 53). Either John Doe #1 or John Doe #2 stated, "in sum and substance, 'I told you we'd be back.'" (*Id*. at ¶ 55).

At no point during this encounter did any of the corrections officers present intervene to stop the assault. (*Id*. at ¶ 56). Plaintiff did not resist the use of force, nor did he make any threats, physical or verbal, to the corrections officers. (*Id*. at ¶¶ 57, 60).

After the assault, Plaintiff was handcuffed and taken to the infirmary. (*Id*. at ¶ 64). The medical staff responsible for photographically documenting his injuries took only "two close-up photographs of [Plaintiff's] face," in an effort to minimize the extent of his injuries. (*Id*. at ¶ 65). The documented injuries consisted of a half-inch abrasion on the right temple and a grape-sized raised area on the left eyebrow. (*Id*. at ¶ 66). However, Plaintiff also had the following injuries that were not documented: "a deep purple mark on his left thigh that was painful to the touch; deep purple bruises on the inside of his left knee, making it feel as though his knee were broken; injury marks on his left ankle; a swollen left elbow, preventing him from being able to fully extend his left arm; and a severe laceration on his bottom left gums" that subsequently became infected due to a lack of treatment. (*Id*. at ¶ 68). Plaintiff "received minor medical treatment incongruous to the serious degree of his injuries, namely, the application of bacitracin ointment and a Band-Aid." (*Id*. at ¶ 67). On May 6, 2022, Plaintiff complained to a doctor at Attica about his additional injuries. (*Id*. at ¶ 69). Plaintiff tried to seek treatment for these additional injuries but "was denied the opportunity to do so." (*Id*. at ¶ 70). The additional injuries were never officially documented. (*Id*. at ¶ 71).

On May 4, 2022, Plaintiff received a misbehavior report falsely alleging that he had assaulted Greening and had possessed a makeshift weapon. (*Id*. at ¶ 75). Nowicki, a sergeant at Attica, falsely claimed to have supervised the search on May 4, 2022, and to

have witnessed Plaintiff assaulting Greening. (*Id.* at ¶ 76). Nowicki was not present during the search on May 4, 2022, nor was any other supervisor. (*Id.* at ¶ 77).

On May 23, 2022, Plaintiff appeared for a disciplinary hearing over which Beck presided. (*Id.* at ¶¶ 86-87). At the disciplinary hearing, Nowicki falsely testified that he was supervising the search on May 4, 2022, and that he entered Plaintiff's cell when he heard a commotion emanating from it, at which time he witnessed Plaintiff elbow Greening. (*Id.* at ¶ 88).

Surveillance cameras at Attica captured video of the gallery area of the facility, where Nowicki claimed to have been positioned on May 4, 2022. (*Id.* at ¶ 90). However, Beck refused to allow Plaintiff to view this video footage, even though it "would have conclusively shown that Defendant Nowicki had presented false testimony and was not, in fact, present for the May 4th Search." (*Id.* at ¶ 91). Instead, Beck "relied exclusively on Nowicki's false testimony to find [Plaintiff] guilty of the charges in the falsified misbehavior report." (*Id.* at ¶ 92). Plaintiff was punished with 270 days in the special housing unit ("SHU"), a loss of privileges, and a loss of six months of "good time" credit. (*Id.* at ¶ 80).

On July 7, 2022, Rodriguez reviewed and modified the results of the May 23, 2022 hearing. (*Id.* at ¶ 93). Specifically, Rodriguez dismissed one of the charges against Plaintiff but otherwise affirmed Beck's determination. (*Id.* at ¶¶ 93-94). Rodriguez also kept the prescribed punishment in place. (*Id.* at ¶ 93). Plaintiff requested reconsideration, and Rodriguez ordered a second hearing on October 18, 2022. (*Id.* at ¶ 95).

The second hearing occurred on October 31, 2022, with McGrain serving as hearing officer. (*Id*. at ¶ 96). McGrain allowed Plaintiff to view the video footage that Beck had refused to allow him to view, and that video footage confirmed that Nowicki had fabricated his testimony. (*Id*. at ¶¶ 96-97). McGrain nevertheless again found Plaintiff guilty of the charges in the falsified misbehavior report, and left his punishment in place. (*Id*. at ¶¶ 98-99).

Plaintiff made another request for reconsideration and, on March 17, 2023, Rodriguez vacated and expunged Plaintiff's violation conviction. (*Id*. at ¶ 100). However, by that time Plaintiff had already spent 270 days in the SHU, during which time he was denied privileges. (*Id*. at ¶¶ 101).

Based on these allegations, Plaintiff's amended complaint contains the following claims: (1) a claim for excessive use of force under 42 U.S.C. § 1983 against Burch, Dunning, Greening, McGrain, and John Does #1-5; (2) a claim for First Amendment retaliation under § 1983 against Burch, Dunning, Greening, McGrain, and John Does #1-5; (3) a claim for fabrication of evidence and denial of due process under § 1983 against Nowicki, Beck, Rodriguez, and McGrain; (4) a claim for assault under New York common law against Burch, Dunning, Greening, McGrain, and John Does #1-5; (5) a claim for battery under New York common law against Burch, Dunning, Greening, McGrain, and John Does #1-5; and (6) a claim for negligent supervision under New York common law against defendant Nowicki. (*Id*. at ¶¶ 104-34).

**PROCEDURAL BACKGROUND**

Plaintiff commenced this action on May 4, 2023. (Dkt. 1). He filed the amended complaint on August 11, 2023. (Dkt. 22). Burch, Dunning, Greening, McGrain, Nowicki, and Rodriguez filed a partial motion to dismiss. (Dkt. 25). Beck, who had not been served, did not join in that motion. Plaintiff filed opposition papers (Dkt. 27), and Burch, Dunning, Greening, McGrain, Nowicki, and Rodriguez filed a reply (Dkt. 29).

The Court thereafter granted Plaintiff an extension of time to serve Beck (Dkt. 30), who filed her own motion to dismiss after service was completed (Dkt. 33). Plaintiff filed opposition papers (Dkt. 35), and Beck filed a reply (Dkt. 36).

After briefing on both pending motions to dismiss was completed, Plaintiff filed a letter request for issuance of a scheduling order under Federal Rule of Civil Procedure 16 and for scheduling of an initial pretrial conference, which the appearing defendants opposed. (Dkt. 37; Dkt. 39). The Court entered a Text Order referring this matter to Judge Schroeder for all non-dispositive pre-trial matters (Dkt. 38), and Judge Schroeder issued a Text Order deferring entry of a case management order pending resolution of the motions to dismiss (Dkt. 40). Plaintiff filed an appeal from Judge Schroeder's Text Order (Dkt. 41), which was opposed by the appearing defendants (Dkt. 43). Plaintiff completed the briefing on his appeal by filing a reply. (Dkt. 44).

**DISCUSSION**

I.  **Legal Standard**

"In considering a motion to dismiss for failure to state a claim pursuant to [Federal] Rule [of Civil Procedure] 12(b)(6), a district court may consider the facts alleged in the

complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II. Burch, Dunning, Greening, McGrain, Nowicki, and Rodriguez's Motion to Dismiss

Burch, Dunning, Greening, McGrain, Nowicki, and Rodriguez seek dismissal of Plaintiff's state law causes of action in their entireties for lack of subject matter jurisdiction, and of Plaintiff's third cause of action (fabrication of evidence and denial of due process) against Nowicki for failure to state a claim. (Dkt. 25-1 at 4). In response, Plaintiff has indicated that he "abandons his state law claims." (Dkt. 27 at 5 n.1). The Court will therefore dismiss the state law causes of action without prejudice. The Court further concludes, for the reasons discussed below, that Plaintiff has stated a viable denial of due process claim against Nowicki.

"The issuance of false misbehavior reports and provision of false testimony against an inmate by corrections officers is insufficient on its own to establish a denial of due process." *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005). However, there are "two exceptions to this rule: when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (quotation omitted). Here, Plaintiff has plausibly alleged that both of these exceptions apply. First—and as discussed more fully below in connection with Plaintiff's claim against Beck—he has plausibly alleged that Nowicki's false misbehavior report and false testimony caused him to be disciplined without adequate due process. Second, he has plausibly alleged that the assault that Nowicki was covering up was retaliation for the Green Haven Lawsuit. A reasonable fact-finder could infer that

Nowicki, like the defendants who directly participated in the assault, had a retaliatory motive.

Nowicki's arguments to the contrary are unpersuasive. He asserts that "[t]here is no allegation or claim that Defendant Nowicki was previously acquainted with Plaintiff or that Defendant Nowicki was aware of Plaintiff's prior successful lawsuit against DOCCS." (Dkt. 25-1 at 9-10). However, as set forth above, Plaintiff has alleged that the defendants who assaulted him made clear that the assault was retaliation for the Green Haven Lawsuit by taunting him with the newspaper article previously taken from his cell. Plaintiff has also alleged that Nowicki deliberately falsified his testimony in order to protect the defendants who assaulted Plaintiff. (Dkt. 22 at ¶¶ 4-5). Plaintiff has further alleged that other inmates who had previously sued DOCCS or individual corrections officers were injured during the facility-wide search on May 4, 2022. It is a reasonable inference from these specific factual allegations that Nowicki and the defendants who assaulted Plaintiff were participants in a common plan to punish Plaintiff for having brought the Green Haven Lawsuit.

Nowicki further argues in reply that Plaintiff has not plausibly alleged that he was deprived of a right to due process during his disciplinary hearing. (Dkt. 29 at 5-6). The Court rejects that contention, for the reasons discussed below in connection with Beck's motion to dismiss.

Accordingly, there is no basis for dismissal of Plaintiff's third cause of action as to Nowicki, and Nowicki's request for the same is denied.

### III.  Beck's Motion to Dismiss

The only cause of action asserted against Beck is the third cause of action, for denial of due process.  Beck seeks dismissal of this claim against her, arguing that "Plaintiff's allegations against Defendant Beck boil down to the claim that Plaintiff was unable to confront co-defendant Nowicki with the video footage" and that this is insufficient to constitute a violation of the right to due process. (Dkt. 33-1 at 7).

"[S]erious prison discipline like . . . punishment in solitary confinement must meet the minimum requirements of procedural due process appropriate for the circumstances." *Willey*, 801 F.3d at 64 (quotation omitted).  Relevant to the instant matter, the Second Circuit has long held that due process requires that prison "disciplinary determinations be supported by some 'reliable evidence' of guilt." *Elder v. McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020) (quoting *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)).  "Due process does not permit a hearing officer simply to ratify the bald conclusions of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion." *Id*. (citation omitted).

Plaintiff has plausibly alleged that in this case, Beck did nothing more than accept Nowicki's demonstrably false testimony, despite having in her possession video evidence that conclusively demonstrated that he was lying.  A reasonable fact-finder could conclude that this constituted a denial of due process.

Beck's contrary argument lacks merit.  She urges the Court to conclude that the defendants who assaulted Plaintiff must have testified at the disciplinary hearing before her, thus providing her with a reasonable basis on which to find Plaintiff guilty.  (Dkt. 33-

1 at 8; Dkt. 36 at 6-7). This argument turns the standard on a motion to dismiss on its head, by drawing inferences in favor of Beck—the moving party—rather than in favor of Plaintiff. *See Ivy Asset Mgmt.*, 843 F.3d at 566; *see also In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2015 WL 6472656, at *8 (S.D.N.Y. Oct. 23, 2015) ("If a fact is susceptible to two or more competing inferences, in evaluating a Rule 12(b)(6) motion, the Court must, as a matter of law, draw the inference that favors the plaintiff so long as it is reasonable."). There are any number of reasons why the defendants who assaulted Plaintiff might not have been available to testify at the disciplinary hearing, and this Court cannot, on a motion to dismiss, simply assume that they did so, and that their testimony provided reliable evidence for Beck's guilty determination.

Beck has failed to demonstrate that dismissal of Plaintiff's claim against her is warranted. Her motion is accordingly denied.

## IV. Plaintiff's Appeal of Judge Schroeder's Text Order

As previously explained, Judge Schroeder deferred entering a case management order in this matter until the pending motions to dismiss were resolved. (Dkt. 40). Those motions have now been resolved. The Court thus anticipates that a case management order will be entered in due course. Plaintiff's appeal of Judge Schroeder's Text Order (Dkt. 41) is therefore denied as moot. The Court notes that even if the issue was not mooted by this Decision and Order, it would deny the appeal for failure to establish any clear error by Judge Schroeder, who has discretion and authority to manage cases pending before him as he deems appropriate.

## CONCLUSION

For the foregoing reasons, Burch, Dunning, Greening, McGrain, Nowicki, and Rodriguez's motion to dismiss (Dkt. 25) is granted to the extent that Plaintiff's state law claims are dismissed without prejudice and denied in all other respects. Beck's motion to dismiss (Dkt. 33) is denied. Plaintiff's appeal of Judge Schroeder's Text Order (Dkt. 41) is denied as moot.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: April 9, 2024
 Rochester, New York